# EXHIBIT 1

Case 3:24-cv-03975-AMO  Document 1-2  Filed 07/01/24  Page 1 of 5



## Amended and Restated PPP Loan Referral Agreement

This Amended and Restated PPP Loan Referral Agreement (the "**Agreement**") is made and entered into on April 14th, 2021 (the "**Amendment Effective Date**") by and between Oto Analytics, Inc. d/b/a Womply ("**Womply**") and Benworth Capital Partners, LLC (the "**Lender**"). In consideration of the mutual promises and covenants contained herein, and for other good and valuable consideration, Womply and Lender hereby agree as follows:

**WHEREAS,** Lender desires to engage in the origination, marketing, underwriting, and funding of loans, as well as the servicing, management and liquidation of the subsequently resulting loan portfolios, funded and created under the U.S. Small Business Administration ("**SBA**") Paycheck Protection Program (the "**PPP**");

**WHEREAS**, Lender has the ability to independently evaluate, process, close, service, liquidate, and litigate commercial loans;

**WHEREAS**, Lender and Womply desire to establish an independent contractor relationship whereby Womply provides referrals to Lender in connection with potential loan applicants seeking loans under the PPP;

**WHEREAS**, Lender and Womply specifically acknowledge that Lender retains ultimate responsibility for all loan decisions, including approvals, underwriting, closings, disbursements, due diligence, and loan servicing actions (including those relating to loan deferments, loan forgiveness, and loan guarantees), as required by the SBA, and Womply will exercise all best efforts to comply with all regulatory requirements of the PPP; and

**WHEREAS**, Lender and Womply entered into that certain PPP Loan Referral Agreement dated February 25th, 2021 (the "**Original Agreement**") but have since agreed to amend the economics thereof to provide an early-payment discount to Lender.

**NOW THEREFORE**, in consideration of the mutual covenants, promises, and undertakings contained herein, and for such other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto do hereby agree as follows:

1. **Referrals**.

1.1. Womply may, from time to time, refer to Lender such PPP loan applicants as Womply shall, in its sole and absolute discretion, deem appropriate (each such applicant a "**Referral**"). Womply acknowledges that sometimes the same borrower is submitted to Lender by multiple referring parties. Womply will be the party paid if they were the first to submit a complete package to Lender for the requested loan.

1.2. WOMPLY MAKES NO REPRESENTATIONS OR WARRANTIES ABOUT, AND HEREBY DISCLAIMS ALL RESPONSIBILITY FOR, THE ACCURACY, LAWFULNESS, OR COMPLETENESS OF ANY INFORMATION ACCOMPANYING A REFERRAL. FOR THE AVOIDANCE OF DOUBT, WOMPLY DOES NOT ENDORSE ANY REFERRAL. LENDER ASSUMES SOLE RESPONSIBILITY REGARDING WHETHER OR NOT ANY REFERRAL IS OR SHOULD BE SENT TO THE SBA FOR REVIEW.

1.3. Womply is not a lender or lender service provider as defined by the SBA.

2. **Compensation**.

2.1. The Referral Fees described in this Section 2 will be paid out of the fees actually received by Lender in respect of Referred Loans (defined below) in Lender's capacity as a "Lender" for such Referred Loans under SBA Regulations (as may be amended, the "**Lender Fees**"). As of the Amendment Effective Date, the current maximum Lender Fees under the SBA Regulations are:

- For loans of not more than $50,000, an amount equal to the lesser of 50% of the loan amount or $2,500;
- 5% of the loan amount for loans more than $50,000 but not more than $350,000; and
- 3% of the loan amount for loans more than $350,000 and less than or equal to $2,000,000.

2.2. In consideration of Womply providing Lender with Referrals, Lender shall pay to Womply the referral fee set forth in the table below, which is expressed as a percentage of the outstanding balance of the Referred Loan at the time of loan disbursement (such fees, the "**Referral Fees**"), for each loan originated by Lender under the PPP resulting from a Referral (such loan a "**Referred Loan**").

**womply**

| Referral Fee Amount | 1.00% for each Referred Loan |

2.3. Within thirty (30) days of Lender receiving the Lender Fee from the SBA, Lender will pay Womply all associated Referral Fees for each applicable Referred Loan. Womply shall return any Referral Fees paid in the event that the SBA or other governmental agency requires Lender to return the Lender Fee. Additionally, Womply shall return any portion of Referral Fees paid that the SBA or other governmental agency determines were not in compliance with applicable SBA and/or PPP Loan Program Requirements. Such return of fees will occur within fifteen (15) days of Womply receiving notice of such return of fees from Lender.

2.4. Each party shall be responsible for and pay any and all applicable taxes, customs, withholding taxes, duties, assessments and other governmental impositions resulting from its own activities under this Agreement. Referral Fee payments not made in accordance with the foregoing schedule are subject to a finance charge of 1.5% per month or the maximum permitted by law, whichever is lower, plus all costs of collection. Except as expressly set forth above, all Referral Fees paid are non-refundable, non-cancellable, and not subject to set-off. All payments described in this Section 2 must be made by wire transfer.

3. **Representations and Warranties**. Each party represents, warrants, and covenants that: (a) it has the full right, power and authority to execute this Agreement and perform its obligations hereunder; (b) its performance hereunder will not conflict with any obligation it has to any third party; and (c) it has and will maintain such comprehensive general liability and other insurance as is necessary to cover any claims and losses associated with any of its obligations under this Agreement.

4. **Term; Termination**.

4.1. The term of this Agreement shall be one (1) year from the Effective Date of the Original Agreement (as defined therein) (the "**Term**"), and thereafter upon the mutual written consent of both parties shall renew for successive one (1) year terms unless earlier terminated, if Notice of Termination is timely provided, in accordance with this Section 6.

4.2. Notwithstanding Section 4.1 above, either party may terminate this Agreement at its option by providing no less than thirty (30) days' written notice ("**Notice of Termination**") to the other party. Either party may also terminate this Agreement immediately upon delivery of a Notice of Termination if the other party is in material breach of any warranty, representation, covenant or obligation under this Agreement and is not able to cure such breach within seven (7) calendar days of receiving the Notice of Termination.

4.3. Upon Lender's receipt of a Notice of Termination, Lender may request from Womply, and Womply shall reasonably provide to Lender, a plan for transmitting to Lender electronic copies of loan files in its possession that relate to the Referred Loans, to the extent not otherwise in the possession of Lender. Womply will not unreasonably withhold its cooperation in such selection and transmission. Both parties shall agree upon a data format and method of transmission. Womply shall reasonably provide such requested information to Lender no later than thirty (30) days following the termination of this Agreement.

4.4. The following Sections shall survive termination or expiration of this Agreement: 2 (to the extent Referral Fees remain outstanding), 3, 4.3, 4.4, 4.5, and 5 through 17.

4.5. Womply shall be entitled to all Referral Fees accrued in connection with Referred Loans pursuant to the terms and provisions of Section 2 above, including services provided after termination of this Agreement pursuant to Lender's request.

5. **Confidential Information**.

5.1. During the course of performing this Agreement, each party may have access to confidential or proprietary information of the other party, as well as confidential customer information that accompanies each Referral ("**Confidential Information**"). The protection of confidential customer information is required at all times and Lender and Womply shall at all times comply with relevant state and federal regulations regarding disclosure of such Confidential Information, including if applicable the Gramm-Leach-Bliley Act (15 U.S.C. §§ 6801-6809) and the Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.).

5.2. A party's Confidential Information shall not include any information which (i) becomes part of the public domain through no act or omission of the other party; (ii) is lawfully acquired by the other party on a non-confidential basis from a third party without any breach of a confidentiality obligation; (iii) is disclosed by such party to a third

**womply**

party without any obligation of confidentiality; or (iv) was independently developed by the other party without reference to such party's Confidential Information. Each party agrees to use the other party's Confidential Information only as necessary to perform its obligations under this Agreement and to maintain the confidentiality of the other party's Confidential Information using at least the same degree of care in safeguarding the other's Confidential Information as it uses in safeguarding its own Confidential Information, subject to a minimum standard of reasonable diligence and protection to prevent any unauthorized copying, use, distribution, installation or transfer of possession of such information. If required by law, the receiving party may disclose Confidential Information of the disclosing party, provided the receiving party gives adequate prior notice of such disclosure to the disclosing party to permit the disclosing party to intervene and to request protective orders or other confidential treatment therefor.

**6.    Indemnification.**

6.1.    Subject to Section 6.2, each party ("**Indemnifying Party**") shall indemnify, defend, and hold the other party, its officers, directors, employees, representatives and agents ("**Indemnified Parties**"), harmless from and against any Claim (defined below) to the extent resulting from: (i) a material violation of any law, rule, or regulation applicable to the Indemnifying Party's performance obligations herein; or (ii) infringement, conflict with, or violation by the Indemnifying Party of any intellectual property rights, contracts rights, or tort rights (including the right of publicity or right of privacy) of any third party. Indemnifying Party agrees to promptly pay and fully satisfy any and all Losses (defined below), including, without limitation, reasonable attorneys' fees, actually incurred, or sustained, as a result of any Claims. "**Claim**" means any third-party claim, legal or equitable, cause of action, suit, litigation, proceeding (including a regulatory or administrative proceeding), complaint, demand, charge, investigation, audit, arbitration, mediation, or other process for settling disputes or disagreements, including, without limitation, any of the foregoing processes or procedures in which injunctive or equitable relief is sought. "**Losses**" mean and include any loss, assessment, fine, penalty, deficiency, interest, payment, expense, cost, debt, indebtedness, liability, lien, judgment, or damage, which is both (a) sustained, incurred, or accrued and (b) paid to an unaffiliated third party.

6.2.    The Indemnified Party shall: (i) promptly notify the Indemnifying Party in writing of any Losses for which the Indemnified Party seeks indemnification; (ii) provide reasonable cooperation to the Indemnifying Party and its legal representatives in the investigation of any matter which is the subject of indemnification; and (iii) permit the Indemnifying Party to have full control over the defense and settlement of any matter subject to indemnification. The Indemnified Party shall have the right to participate in the defense at its own expense.

7.    **Limitation of Liability**. EXCEPT WITH RESPECT TO A BREACH OF SECTION 5 AND EACH PARTY'S INDEMNIFICATION OBLIGATIONS HEREUNDER, (I) NEITHER PARTY WILL BE LIABLE OR OBLIGATED WITH RESPECT TO ANY SUBJECT MATTER OF THIS AGREEMENT OR UNDER ANY CONTRACT, TORT, STRICT LIABILITY OR OTHER LEGAL OR EQUITABLE THEORY, WHETHER OR NOT ADVISED OF THE POSSIBILITY OF SUCH DAMAGES WHATSOEVER, FOR ANY SPECIAL, INDIRECT, INCIDENTAL, EXEMPLARY, PUNITIVE, RELIANCE OR CONSEQUENTIAL DAMAGES, INCLUDING LOSS OF PROFITS, REVENUE, DATA OR USE, AND (II) NEITHER PARTY'S LIABILITY SHALL EXCEED THE AMOUNTS PAID AND PAYABLE (IN THE CASE OF LENDER'S BREACH ONLY) TO WOMPLY DURING THE TWELVE (12) MONTHS PRIOR TO THE EVENT GIVING RISE TO SUCH LIABILITY.

8.    **Recitals**. The recitals set forth above are hereby incorporated into this Agreement.

9.    **Choice of Law**. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to the provisions of the conflict of laws thereof. Notwithstanding the foregoing or any provision of this Agreement to the contrary, this Agreement is subject to all Applicable Laws, including SBA Regulations. In the event of any conflict between the governing law and the SBA Regulations (defined below), the SBA Regulations shall control. "SBA Regulations" means all PPP requirements and SBA guidelines under the CARES Act, the Economic Aid Act, the PPP Flexibility Act, any rules or guidance that have been issued by SBA implementing the PPP, including SBA regulations published at 86 Fed. Reg. 3692 (Jan. 14, 2021) and 85 Fed. Reg. 20811 (Apr. 15, 2020) and any subsequent Interim Final Rules and other guidance as may have been or may be subsequently issued by SBA or the U.S. Department of the Treasury with respect to the origination, servicing and forgiveness of loans under the PPP and Frequently Asked Questions, or any other applicable SBA loan requirements, including those codified in 13 CFR part 120, in each case as amended, supplemented or modified from time to time. In the event that this Agreement conflicts with any other contract or agreement between the parties, now or in the future, this Agreement shall control with respect to any Referred Loan unless the other contract or agreement specifically states that it supersedes this Agreement.

**womply**

10. **Arbitration**. Without limiting a party's right to seek injunctive or other equitable relief in court, any dispute between the parties related to the subject matter of this Agreement will be resolved by binding arbitration in the English language in San Francisco County, California under the rules of JAMS; the decision of the arbitrator will be enforceable in any court. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.

11. **Independent Contractors**. This Agreement is not intended to establish any partnership, joint venture, employment, or other relationship between the parties except that of independent contractors. Neither party has, or may represent that it has, any authority under or as a result of this Agreement to act on behalf of the other party in any way.

12. **Notices**. Any notice or other communication required or permitted in this Agreement shall be in writing and shall be deemed to have been duly given on the day of service if served personally or upon receipt if sent by facsimile transmission with confirmation or if mailed by First Class mail, registered or certified, postage prepaid, and addressed to the respective parties at the addresses set forth above, or at such other addresses as may be specified by either party pursuant to the terms and provisions of this section.

13. **Assignment**. Neither party may assign, without the prior written consent of the other, its rights, duties or obligations under this Agreement to any person or entity, in whole or in part; provided, however, that this Agreement may be assigned by a party without the consent of the other to any successor corporation or entity whether by purchase of all or substantially all of the assets relating to this Agreement, a sale of a controlling interest of the capital stock of the assigning party, by merger, consolidation or otherwise. This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and permitted assigns.

14. **Force Majeure**. Neither party will be liable for failure or delay in performance of any of its obligations under this Agreement arising out of any event or circumstance beyond that party's reasonable control; *provided, however*, that such party promptly notifies the other party of the nature and duration of the force majeure event and resumes performance as soon as possible.

15. **Severability**. Any provision of this Agreement that is determined to be unenforceable or unlawful shall not affect the remainder of the Agreement and shall be severable therefrom, and the unenforceable or unlawful provision shall be limited or eliminated to the minimum extent necessary so that this Agreement shall otherwise remain in full force and effect and enforceable.

16. **Entire Agreement**. Excluding separate agreements Lender may have for the purchase of Womply's products and services, this Agreement constitutes the entire agreement between the parties and supersedes any and all prior communications or agreements between them, whether written or oral, with respect to the subject matter hereof, including without limitation the Original Agreement. This Agreement may not be amended, modified or any provision hereof waived, except in a writing signed by the parties hereto. No waiver by either party, whether express or implied, of any provision of this Agreement, or of any breach thereof, shall constitute a continuing waiver of such provision or a breach or waiver of any other provision of this Agreement.

17. **Press Releases**. Any news release, public announcement, advertisement, or other publicity released by either party concerning this Agreement shall be subject to the prior approval of the other party, which approval shall not be unreasonably withheld or delayed. The parties will cooperate with each other to issue a joint press release announcing their relationship established by this Agreement.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Amendment Effective Date.

**Womply:**

By: _____
Name: Cory Capoccia
Title: President

**Lender**

By: _____
Name: Bernardo Navarro
Title: President