# EXHIBIT 2

# womply

## Womply Developer Order Form

| Client: | Benworth Capital Partners, LLC |
|---|---|
| Effective Date: | April 14th, 2021 |
| API Access End Date: | The earlier of twelve (12) months from Effective Date or when this Order or the Agreement is terminated. |

| API Package | Payments |
|---|---|
| Tax Documents<br>Business Fraud Analytics<br>Bank Data<br>Identity<br>Account Verification<br>PPP Portfolio Management System | $250 per funded PPP loan sourced through the Services (the "**API Fee**") plus the Technology Fee set forth in Section 2 below. |

This Amended and Restated Womply Developer Order Form agreement ("**Agreement**") is entered into as of the Effective Date and is between Oto Analytics, Inc. d/b/a Womply ("**Womply**") and the Client listed above. This Agreement includes and incorporates (i) the above Order Form, (ii) any Order Forms subsequently entered into by the parties, (iii) the Womply Master Developer Agreement located at http://www.womply.com/mda (the "**MDA**"), and (iv) the Additional Terms and Conditions set forth below. Unless set forth otherwise, undefined capitalized terms are defined in the MDA or Amended and Restated PPP Loan Referral Agreement between the Parties (the "**Referral Agreement**"). To the extent there is a conflict between the Order Form Terms and the MDA or the Referral Agreement, the Order Form Terms shall take precedence. This Agreement supersedes all prior communications and writings and constitutes the entire agreement between the parties with respect to the Services, including without limitation the Womply Developer Order Form agreement between the parties dated February 25th, 2021.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the Effective Date.

**Womply:**

By: _____
Name: Cory Capoccia
Title: President

**Client:**

By: _____
Name: Bernardo Navarro
Title: President

**womply**

## Additional Terms and Conditions

1. <u>Disclaimers</u>.

1.1. WOMPLY MAKES NO REPRESENTATIONS OR WARRANTIES ABOUT, AND HEREBY DISCLAIMS ALL RESPONSIBILITY FOR, THE ACCURACY, LAWFULNESS, OR COMPLETENESS OF ANY INFORMATION ACCOMPANYING A REFERRAL (I.E., OUTPUT MADE AVAILABLE VIA THE SERVICES). FOR THE AVOIDANCE OF DOUBT, WOMPLY DOES NOT ENDORSE ANY REFERRAL. CLIENT ASSUMES SOLE RESPONSIBILITY REGARDING WHETHER OR NOT ANY REFERRAL SHOULD BE SENT TO THE SBA FOR REVIEW.

1.2. The Services includes integrations with and/or links to certain third-party service providers (including, without limitation, Plaid, Docusign, LexisNexis, Teslar, Inscribe, Ocrolus, AWS Mechanical Turk, Mindee, Persona, Twilio, Sendgrid, etc.) ("**Third-Party Providers**"). WOMPLY HAS NO CONTROL OVER AND ASSUMES NO RESPONSIBILITY FOR THE ACTIONS, ERRORS, OR OMISSIONS OF THE THIRD PARTY PROVIDERS.

1.3. Womply is not a lender or lender service provider as defined by the SBA.

2. <u>Technology Fee</u>.

2.1. Client shall pay Womply the technology fees described below for each loan originated by Client under the PPP resulting from a Referral (which for purposes of clarity, the max percentage applies to Referred Loans funded prior to achieving the Referred Loan Volume) ("**Referred Loan**"):

    2.1.1. The percentage owed for any Referred Loan will be determined based on the Referred Loan Tier for that specific loan ("**Technology Fees**").

    2.1.2. In the case where the Lender Processing Fee for a given Referred Loan is two-hundred and fifty dollars ($250) or less:

        2.1.2.1. There will be no Technology Fee due from the Client to Womply. (For avoidance of doubt, the API Fee set forth above will be owed regardless of the Lender Processing Fee.)

        2.1.2.2. Such Referred Loans will be disregarded when calculating the Referred Loan Tiers.

    2.1.3. Referred Loans will be assigned to a Referred Loan Tier based on the date each loan is approved by the SBA.

| Tier | Referred Loan Tiers | Technology Fee Percentage |
|---|---|---|
| 1 | 1 through 30,000 Referred Loans | 50% of the Lender Processing Fee for each Referred Loan |
| 2 | 30,001 through 45,000 Referred Loans | 60% of the Lender Processing Fee for each Referred Loan |
| 3 | 45,001 through 60,000 Referred Loans | 70% of the Lender Processing Fee for each Referred Loan |
| 4 | 60,001 through 300,000 Referred Loans | 80% of the Lender Processing Fee for each Referred Loan |
| 5 | Greater than 300,000 Referred Loans | 70% of the Lender Processing Fee for each Referred Loan |

2.2. The Technology Fee payable to Womply for any Referred Loan shall be reduced by any Referral Fee paid to Womply for the same Referred Loan. By way of example, if a Referred Loan from Tier 1 above has a principal amount of $50,000 and if Client receives a Lender Processing Fee of $2,500, then the Technology Fees payable to Womply shall be calculated as follows:

**womply**

Tier 1 Technology Fee = (**Tier 1 Technology Fee Percentage** X **Lender Processing Fee**) minus **Referral Fee** (as determined by the Referral Agreement):

$750 = (**50%** X $2,500) - **$500**

2.3.   Within fifteen (15) days of Client receiving the Lender Processing Fee from the SBA, Client will pay Womply all associated Technology Fees for each applicable Referred Loan. Womply shall return any Technology Fees paid in the event that the SBA or other governmental agency requires Client to return the Lender Processing Fee. Additionally, Womply shall return any portion of the Technology Fees paid that the SBA or other governmental agency determines were not in compliance with applicable SBA and/or PPP Loan Program Requirements. Such return of fees will occur within fifteen (15) days of Womply receiving notice of such return of fees from Client.

2.4.   Each party shall be responsible for and pay any and all applicable taxes, customs, withholding taxes, duties, assessments and other governmental impositions resulting from its own activities under this Agreement.

2.5.   Subject to having sufficient Referred Loans with approved SBA Loan numbers ("SBA Approved Loans"), Client shall fund no less than five hundred million dollars ($500,000,000) of SBA Approved Loans per calendar week ("Minimum Weekly Funding Commitment"), and if Client fails to achieve the Minimum Weekly Funding Commitment in any such week, Client will pay Womply an under-funding fee of ten percent (10%) times the funding amount below the Minimum Weekly Funding Commitment for each applicable week Client falls below the Minimum Weekly Funding Commitment (the "Under-Funding Fee"). By way of example, if Client funds $475,000,000 in a given calendar week, then the Under-Funding Fee will equal $2,500,000 (calculated as the $25,000,000 below the Minimum Weekly Funding Commitment times 10%).

Notwithstanding, client shall not liable for the Under-Funding fee solely to the extent its failure to achieve the Minimum Weekly Funding Fee results from acts beyond its reasonable control including, without limitation, acts of God, acts of war or terrorism, shortage or interruption of money supply from Lender's bank or the Federal Reserve Board of San Francisco, breakdowns or malfunctions, interruptions or malfunction of computer facilities, or loss of data due to power failures or mechanical difficulties with information storage or retrieval systems, labor difficulties or civil unrest. In the event of such an occurrence, Client shall make a good faith effort to fulfil its Minimum Weekly Funding Commitment."

3.   <u>Representations and Warranties</u>. Each party represents, warrants, and covenants that: (a) it has the full right, power and authority to execute this Agreement and perform its obligations hereunder; (b) its performance hereunder will not conflict with any obligation it has to any third party; and (c) it has and will maintain such comprehensive general liability and other insurance as is necessary to cover any claims and losses associated with its obligations under this Agreement.

4.   <u>Miscellaneous</u>. This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to the provisions of the conflict of laws thereof. Notwithstanding the foregoing or any provision of this Agreement to the contrary, this Agreement is subject to all Applicable Laws, including SBA Regulations. In the event of any conflict between the governing law and the SBA Regulations, the SBA Regulations shall control. Without limiting a party's right to seek injunctive or other equitable relief in court, any dispute between the parties related to the subject matter of this Agreement will be resolved by binding arbitration in the English language in San Francisco County, California under the rules of JAMS; the decision of the arbitrator will be enforceable in any court. The prevailing party in any action to enforce this Agreement shall be entitled to costs and attorneys' fees.